245c903
PSS/DTS

RECEIVED BY MAIL

MAR 12 2024

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

J. Bryan Quesenberry
2750 SW Coast Ave.
Lincoln City, OR 97367
801-473-9951
jbq.esq@gmail.com
*Plaintiff/Relator*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, <u>ex</u> <u>rel</u>. J. BRYAN QUESENBERRY,<br><br>　　　Plaintiff/Relator,<br><br>vs.<br><br>MINNESOTA STATE AGRICULTURAL SOCIETY a/k/a MINNESOTA STATE FAIR BOARD d/b/a MINNESOTA STATE FAIR,<br><br>　　　Defendant. | **COMPLAINT FOR VIOLATION OF FEDERAL FALSE CLAIMS ACT**<br><br>**(Filed in camera and under seal) (DO NOT PLACE ON PACER)**<br><br>JURY TRIAL DEMANDED<br><br>Civil Action No. _____ |

Plaintiff-Relator J. Bryan Quesenberry, a licensed attorney acting *pro se* on behalf of the United States of America (the **"Government"** or the **"Federal Government"**) and against Defendant, alleges, based upon personal knowledge, relevant documents, information, and belief, as follows.

## INTRODUCTION

1.　　This is an action to recover damages and civil penalties on behalf of the United States of America arising from false and/or fraudulent records, statements, and claims made and caused to be made by Defendant and/or its agents and employees, in violation of the federal False Claims Act, 31 U.S.C. §§ 3729, *et seq*. **("FCA")**.

2.　　This action seeks to recover more than $2.9 million wrongfully loaned to Defendant through the Federal Government's Payroll Protection Program **("PPP")**.

SCANNED

MAR 12 2024

U.S. DISTRICT COURT MPLS

3. Defendant is a government-owned and -controlled entity, as detailed below.

4. As such, Defendant was not entitled to PPP funds. *See*, 13 CFR 120.110(j) ("government-owned entities" are ineligible to receive SBA loans).

5. Rather, as a government-owned and -controlled entity, Defendant was eligible for Covid relief funds through programs other than the PPP, including, for example, the American Rescue Plan Act and the State and Local Fiscal Recovery Funds program.

6. Nevertheless, Defendant represented in its PPP application that it was eligible for a PPP loan.

7. Because Defendant obtained (and was forgiven of) more than $2.9 million in PPP funds, despite being ineligible, other eligible small businesses were denied the opportunity to borrow and use that PPP money.

## HISTORY OF THE FALSE CLAIMS ACT

8. Pursuant to the PPP, the Federal Government spent hundreds of billions of dollars in stimulus funding, as well as other federal funding, to support and aid small businesses through the coronavirus pandemic.

9. The FCA was enacted during the Civil War, and was substantially amended in 1986, and again in 2009 and 2010. Congress amended the FCA in 1986 to enhance the Federal Government's ability to recover losses sustained as a result of fraud against the United States after finding that fraud in federal programs was pervasive and that the FCA, which Congress characterized as a primary tool for combating government fraud, was in need of modernization. The amendments create incentives for individuals to come forward with information about fraud against the Federal Government without fear of reprisals or inaction, and enable the use of private legal resources to prosecute fraud claims on the Federal Government's behalf.

10.     The FCA prohibits, *inter alia*: (1) knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval; and (2) knowingly making or using, or causing to be made or used, a false or fraudulent record or statement material to a false or fraudulent claim. 31 U.S.C. §§ 3729(a)(1)(A), (B). Any borrower who violates the FCA is liable for a civil penalty for each such claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. § 3729(a)(1)(A) (as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 [28 U.S.C. § 2461 note; Public Law 104-410]).

11.     In 2009, Congress amended the FCA to clarify that a "claim" includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest…" 31 U.S.C. § 3729(b)(2).

12.     The FCA allows any person having information about an FCA violation to bring an action for himself and the Federal Government, and to share in any recovery. The FCA requires that the complaint be filed under seal for a minimum of 60 days (without service on Defendant during that time) to allow the Federal Government time to conduct its own investigation and to determine whether to join the suit.

13.     Based on the foregoing laws, *qui tam* Plaintiff/Relator seeks through this action to recover all available damages, civil penalties, and other relief for the violations alleged herein in every jurisdiction to which Defendant's misconduct has extended.

## PARTIES

14.     Plaintiff/Relator J. Bryan Quesenberry (**"Relator"**) is a resident of Oregon. He is an attorney licensed to practice law in Utah and Oregon and brings this action on behalf of the United States of America, the real party in interest.

15.     Defendant Minnesota State Agricultural Society[1] a/k/a Minnesota State Fair Board[2] d/b/a Minnesota State Fair[3] (**"State Agricultural Society"** or **"Defendant")** is a government entity in Ramsey County, Minnesota.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730. Although this issue is no longer jurisdictional after the 2009 amendments to the FCA, upon information and belief there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint, as those concepts are used in 31 U.S.C. § 3730(e), as amended by Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-02.

17.     Moreover, whether or not such a disclosure has occurred, Relator would qualify as an "original source" of the information on which the allegations or transactions in this Complaint are based. Relator researched and discovered the pertinent entity information of Defendant.

---

[1] This is the name of the entity that borrowed the PPP funds at issue.
[2] This name shoes up in many online references and some official documents. See, for example, https://www.twincities.com/2023/01/15/state-fair-board-funds-improvements-sets-2023-admission-prices-at-annual-meeting/
[3] See footer at https://www.mnstatefair.org/

18.     This Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. § 3732(a) because that section authorizes nationwide service of process and because Defendant is a government entity located in the District of Minnesota.

19.     Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1391(b)-(c) and 31 U.S.C. § 3732(a) because Defendant is a government entity located in the District of Minnesota, and because violations of 31 U.S.C. §§ 3729 *et seq*. alleged herein occurred within this district.

## THE PAYCHECK PROTECTION PROGRAM

20.     Congress added sections 1102 and 1106 of the Coronavirus Aid, Relief, and Economic Security Act **("CARES Act")**. Section 1102 contained a new program called the Paycheck Protection Program **("PPP")** and was part of the U.S. Small Business Administration's **("SBA")** 7(a) Loan Program. These two sections were intended to provide economic relief to small businesses nationwide adversely impacted by the coronavirus pandemic and the COVID-19 Emergency Declaration issued by then-President Trump on March 13, 2020.

21.     Due to the COVID-19 emergency, many small businesses nationwide were experiencing economic hardship as a direct result of the Federal, State, and local public health measures that were being taken to minimize the public's exposure to the coronavirus.

22.     The SBA received funding and authority through the CARES Act to modify existing loan programs and establish the new PPP loan program to assist small businesses nationwide adversely impacted by the coronavirus pandemic.

23.     Section 1102 of the Act temporarily permitted SBA to guarantee 100% of 7(a) loans under the PPP. Section 1106 of the CARES Act provided for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

24.    The CARES Act was intended to provide relief to America's small businesses expeditiously.

25.    The CARES Act gave lenders delegated authority to process loan applications for PPP funding. SBA allowed lenders to rely on certifications of the borrowers in order to determine eligibility of the borrower and use of loan proceeds, and to rely on specified documents provided by the borrower to determine qualifying loan amount, and eligibility for loan forgiveness. Lenders were held harmless for borrowers' failures to comply with PPP rules.

26.    Defendant submitted documentation attempting to establish eligibility such as payroll processor records, payroll tax filings, form 1099s, and income and expenses documentation.

27.    On the PPP application, a representative of Defendant had to certify in good faith to a number of representations to the Federal Government. One such representation was critical – that Defendant was eligible to receive a PPP loan. Accordingly, the second bullet point under the CERTIFICATIONS AND AUTHORIZATIONS section on the PPP loan application states:

> ***The Applicant is eligible to receive a loan*** under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule). [Emphasis added].

28.    Another certification on the application states, "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."

29.    Defendant also "further certif[ied] that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

30.    Finally, Defendant certified that it "understand[s] that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18

USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to

$250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not

more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by

imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."

## ALLEGATIONS

### Government-Owned Entities Are Not Eligible to Receive PPP Loans

31.     Title I, Section 1102(a)(i)(D)(i) of the CARES Act indicates that borrowers must

comply with certain eligibility requirements.

32.     One such eligibility requirement is found in the Code of Federal Regulations that

states "government-owned entities" are ineligible to receive SBA loans, which would include

PPP loans. *See*, 13 CFR 120.110(j).

### Defendant Is a Government-Owned Entities

33.     The following information establishes that Defendant is a government-owned

entity and that the State Agricultural Society is a product of the Minnesota Legislature.

34.     The Minnesota Legislature lists the State Agricultural Society as one of

"Minnesota State Agencies, Boards, Task Forces, and Commissions."[4]

35.     The State Agricultural Society is "a public corporation operating under Minn.

Stat. 37," and is "a quasi-state agency charged exclusively with the production of the annual

Minnesota State Fair and management of the historic 320-acre State Fairgrounds."[5]

36.     The Minnesota Legislature created the State Agricultural Society in Chapter 37 of

the Minnesota Statutes, and made clear that the State Agricultural Society is a government entity

owned and controlled by the Legislature similar to other state government entities. For example,

---

[4] https://www.lrl.mn.gov/agencies/detail?AgencyID=52
[5] https://www.lrl.mn.gov/agencies/detail?AgencyID=52

7

the Legislature provided the following statutory provisions in State Agricultural Society's

enabling statute that indicate its government nature:

a. "The State Agricultural Society *is a public corporation*" and intended to provide "the following *public purposes*: (1) exhibiting under the management and control of the society, at annual fairs and at other times determined by the society, the agricultural, stock-breeding, horticultural, mining, mechanical, industrial, and other products and resources of the state, including proper exhibits and expositions of the arts, human skills, and sciences…" MSA § 37.01 (emphasis added).

b. The Legislature confirmed that the land upon which the annual state fair occurs is owned and controlled by the State:[6] "The *conveyance to the state of the land* in Ramsey County … *is confirmed*. Anything in that conveyance to the contrary notwithstanding, *the state holds that land and any other property known and used as the 'State Fairgrounds'*" (emphasis added).

c. "The books and accounts of the society are subject to examination by the legislative auditor." Minn. Stat. Ann. § 37.02(3)

d. "*The state owns all money and other property of the society in the name of the society* and there may be no division of its assets among society members. Money received by the society associated with its annual fair and for other exhibitions or expositions the society holds, for the improvement of the fairgrounds, for the payment of expenses, premiums, and purses, for the acquisition of real and personal property, for the use and benefit of the society, and for furnishing attractions and amusements the board of managers considers necessary for the success of its fairs and other exhibitions and expositions." MSA § 37.13 (emphasis added).

e. The State Agricultural Society maintains complete control of the real and personal property associated with the state fair: "The custody, management, and control of the fairgrounds and all fairgrounds structures are vested in *the society as a department of the state*…" MSA § 37.14 (emphasis added).

f. The Legislature requires the State Agricultural Society to hold an annual fair. MSA § 37.15 ("The society shall hold upon the fairgrounds an annual fair…")

g. The Legislature requires the State Agricultural Society to obtain approval from the Minnesota Executive Council before buying or selling real property. MSA § 37.19 ("The society shall submit to the state Executive Council for its approval, as provided by chapter 9, all its transactions involving real properties, and no

---

[6] The 322-acre site of the Minnesota State Fair is public land owned by the state and assigned exclusively to the Society. See, https://www.mprnews.org/story/2023/08/28/infrequently-asked-questions-who-owns-the-minnesota-state-fair-and-its-buildings

8

transaction involving real property is final until it is approved by the Executive Council.")

h.  The Legislature enabled the State Agricultural Society to form and maintain its own sworn police force. MSA § 37.20 ("The secretary or the president of the society may appoint, in a writing signed by either of them, as many peace officers,[7] as defined in section 626.84, subdivision 1, clause (c), as are necessary, both during the annual fair and throughout the year for the regulation of the Minnesota State Fairgrounds. These peace officers, before entering upon their duties, shall take and subscribe the usual oath of office, endorsed upon their appointment. They have upon the fairgrounds all the power and authority of peace officers and may, within these limits, without warrant, arrest any person found violating state law or any rule, bylaw, or ordinance of the society. They may summarily remove the persons and property of the offenders from the grounds, and take them before any court of competent jurisdiction to be dealt with according to law. Each peace officer shall wear an appropriate badge of office while acting as a peace officer. The society may also contract with the state, any county, or any municipality for police service and protection on the fairgrounds.")

i.  The Legislature enabled the State Agricultural Society to create and maintain its own jail on the site of the fairgrounds. MSA § 37.22 ("The society may provide and maintain a watchhouse or lockup on the fairgrounds for the confinement of offenders and the temporary detention of suspected persons. The society's peace officers shall, without warrant, seize and destroy any intoxicating liquors found upon the fairgrounds.")

37.  The District of Minneapolis recently had occasion to describe the governmental nature of the State Agriculture Society in *Christopher v. Ramsey Cnty.*, 621 F. Supp. 3d 972 (D. Minn. 2022). There, the *Christopher* court described the society as follows:

> The Society is a public corporation created by the Minnesota Legislature. [Citation omitted]; *See generally* Minn Stat. § 37.01 (establishing the Society). The Society manages the Minnesota State Fair and the State Fairgrounds. *Id.* State law permits the Society to make bylaws, ordinances, and rules 'consistent with law which it considers necessary or proper for the government of the fairgrounds

---

[7] (c) "Peace officer" means:

"(1) an employee or an elected or appointed official of a political subdivision or law enforcement agency who is licensed by the board, charged with the prevention and detection of crime and the enforcement of the general criminal laws of the state and who has the full power of arrest, and shall also include the Minnesota State Patrol, agents of the Division of Alcohol and Gambling Enforcement, state conservation officers, Metropolitan Transit police officers, Department of Corrections Fugitive Apprehension Unit officers, and Department of Commerce Fraud Bureau Unit officers, and the statewide coordinator of the Violent Crime Coordinating Council."

Minn. Stat. Ann. § 626.84.

and all fairs to be held on them, and for the protection, health, safety, and comfort of the public on the fairgrounds.' Minn. Stat. § 37.16. Violating the Society's rules, bylaws, or ordinances is a misdemeanor. *Id.*"
*Id.* at 976.

38.     The *Christopher* court further described the State Agriculture Society as "an arm of the State" and "a municipality under § 1983" for purposes of the Minnesota Municipal Tort Claims Act. *Id*. at 980.

39.     Finally, in the State Agriculture Society's own rules (promulgated by the society), the society described itself as a "department of state charged with the responsibility for management and control of the State Fairgrounds and conducting the State Fair and other exhibitions on the State Fairgrounds." State Agriculture Society Rule 1.02(i).

40.     In its 2022 Annual Report, the State Agriculture Society noted that it "provides retirement, disability and death benefits through the State Employees Retirement Fund" and that "[b]enefit provisions are established by state statute and can only be modified by the state legislature."[8]

41.     Financial audits of the State Agriculture Society have been conducted by the Financial Audit Division of the Minnesota Legislature's Office of the Legislative Auditor.[9]

### Defendant's PPP Loans

42.     Notwithstanding the forgoing legal sources and facts clearly describing the State Agriculture Society as a government-owned and government-operated public entity not eligible for PPP loans, the State Agriculture Society applied and was approved for a first-draw PPP loan on May 11, 2020 (loan number 5045227400) in the amount of $1,445,000.00, received said PPP loan, and had said PPP loan forgiven on May 26, 2021, in the amount of $1,459,727.12.

---

[8] https://www.lrl.mn.gov/docs/2023/mandated/231043.pdf
[9] https://www.auditor.leg.state.mn.us/fad/1999/fad99-22.htm

43.     The State Agriculture Society applied and was approved for a second-draw PPP loan on March 12, 2021 (loan number 9439148506) in the amount of $1,451,750, received said PPP loan, and had said PPP loan forgiven on August 18, 2022, in the amount of $1,472,432.47.

44.     Relator reserves the right to amend this Complaint and expand these allegations upon review of the actual applications and supporting documentation submitted by the State Agricultural Society.

## CAUSES OF ACTION

### COUNT 1
### Violations of the FCA, 31 U.S.C. § 3729(a)(1)(A) Against Defendant
### (Submitting a False Claim for Approval)

45.     The above paragraphs are realleged and incorporated herein.

46.     The FCA imposes liability on one who knowingly presents or causes to be presented a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A).

47.     Defendant knowingly presented or caused to be presented to the SBA claims for approval of PPP loan applications for which it was ineligible because it is a government-owned entity.

48.     Defendant's knowing false certifications on the PPP loan applications at issue herein were material to the government's decision to approve and then forgive its PPP loans. When submitting the PPP loan applications, Defendant had to certify it was compliant with SBA's guidance and rules, that it was eligible for the loans, and that all information included on its application forms was true and accurate in all material respects.

49.     But for Defendant's submission of its false claims, it would not have received the loans.

50.     By reason of Defendant's acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

51.     This is a claim for treble damages and penalties under the FCA, 31 U.S.C. § 3729,

*et seq*. Additionally, the United States is entitled to the maximum penalty of up to $11,000 for

each and every violation arising from Defendant's unlawful conduct alleged herein.

**COUNT 2**
**Violations of the FCA, 31 U.S.C. § 3729(a)(1)(B) Against Defendant**
**(Creating a False Record or Statement Material to a False Claim )**

52.     The above paragraphs are realleged and incorporated herein.

53.     The FCA imposes liability on one who knowingly makes, uses, or causes to be

made or used a false record or statement material to a false or fraudulent claim paid or approved

by the U.S. government. 31 U.S.C. § 3729(a)(1)(B).

54.     Defendant knowingly made or caused to be made false records or statements to

support false claims submitted to the SBA for PPP loans.

55.     The false records and statements Defendant made were used to support false

claims submitted to the U.S. government.

56.     By reason of Defendant's acts, the United States has been damaged, and continues

to be damaged, in a substantial amount to be determined at trial.

57.     This is a claim for treble damages and penalties under the FCA, 31 U.S.C. § 3729,

*et seq*. Additionally, the United States is entitled to the maximum penalty of up to $11,000 for

each and every violation arising from Defendant's unlawful conduct alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, *qui tam* Plaintiff/Relator prays for judgment against Defendant as

follows:

1.  That this Court enter judgment against Defendant in an amount equal to three times

    the damages the United Sates has sustained because of Defendant's actions, plus a

12

civil penalty of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729;

2. That Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

3. That Relator be awarded all costs of this action, including attorney's fees and expenses; and

4. That Relator recover such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Dated: 3/5/2024.                    Respectfully submitted,

J. Bryan Quesenberry
Plaintiff/Relator